UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HELEN HAYMER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 10 C 5910 |
| | ) | |
| COUNTRYWIDE BANK, FSB; BANK | ) | |
| OF AMERICA, N.A.; BAC HOME | ) | |
| LOANS SERVICING, LP f/k/a | ) | |
| COUNTRYWIDE HOME LOANS | ) | |
| SERVICING, LP; VALOR FINANCIAL | ) | |
| SERVICES, LLC; MARILYN J.CIESLAK; | ) | |
| and JOHN DOES 1-5, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This case comes before the Court on the motions of Defendants Countrywide Bank, FSB ("Countrywide"), Bank of America ("BoA"), BAC Home Loans Servicing, LP ("BAC"), (collectively, the "Defendants"), Valor Financial Services, LLC ("Valor"), and Valor's owner, Marilyn Cieslak ("Cieslak") to dismiss Plaintiff Helene Haymer's ("Haymer") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons set forth below, the motions are denied in part and granted in part.

---

[1] Countrywide, Valor, and Cieslak also moved to strike portions of Haymer's response to Defendants' motion to dismiss. Since the Court did not consider Haymer's discussion about settlements and press releases, the motions are denied as moot.

## BACKGROUND

This dispute arises over a $157,624 loan made to Haymer by Countrywide. Haymer obtained the loan through Valor, an independent mortgage brokerage company. According to the allegations of the complaint, which we accept as true for purposes of this motion, *Warth v. Seldin*, 422 U.S. 490, 501 (1975), Haymer is a 73 year-old African-American disabled widow residing in a home that she purchased with a mortgage loan. Around January 2009, Haymer was seeking relief from an overly burdensome monthly mortgage payment. An acquaintance referred her to Valor for refinancing. On or about January 6, 2009, Marilyn Cieslak ("Cieslak"), Valor's sole owner, met Haymer at her home. During their meeting, Cieslak assisted Haymer in completing the initial loan application document by writing down information. Although Haymer informed Cieslak that her only source of income was $1,125 in monthly social security benefits, Cieslak failed to include the information in the application. Shortly after the meeting, Cieslak completed a typewritten application and submitted it to Countrywide. On January 18, 2009, Countrywide performed an appraisal of Haymer's property. The property was appraised at $175,000. The loan was approved on January 22, 2009, and the parties closed on the transaction on or about January 26, 2009. After the close of the transaction, Countrywide transferred the loan's servicing rights to BAC and assigned ownership to BoA.

Haymer alleges that the 2009 transaction was a fraud from start to finish. To begin, Haymer claims that Valor fraudulently brokered the deal because Cieslak intentionally excluded Haymer's monthly income during the application process to get the loan approved by the lender. Haymer alleges that Countrywide approved the loan either without verifying or by turning a blind eye to Haymer's financial ability to pay the loan and despite an excessive loan-to-value ratio of over 90%. Haymer also alleges that Valor and Countrywide fraudulently represented to her that the loan was affordable by concealing the monthly repayment amounts. For instance, prior to closing, the Defendants did not provide her with any preliminary disclosures of the loan terms, as required by law, which prevented her from discovering the repayment amounts. Valor also failed to disclose the specific terms of the loan during closing. In fact, Cieslak arrived with a single set of closing documents which Haymer signed and subsequently took all the documents away leaving only the loan application and the House and Urban Development Settlement Statement which did not disclose the monthly payment amounts. Haymer claims that the failure to provide final loan disclosures and other critical closing documents was intended to deprive her of her federal right to cancel the loan within three business days and to prevent her from discovering that she was accepting an unaffordable loan.

After closing, Haymer discovered that her monthly repayment was $1,049.19 which meant that 90% of her gross monthly income would be consumed in loan repayments. Haymer also discovered that Defendants had imposed a 5% interest rate on the mortgage which equated to an increase of .5% to 1% beyond the rate at which she actually qualified. Assigning to Haymer a higher interest rate meant that Countrywide benefited in the form of higher interest income over time or greater re-sale value on the secondary market while Valor cashed a premium in the amount of $2,167.33. Ultimately, Haymer defaulted on the loan and BoA and BAC filed a foreclosure action, now pending in Cook County Circuit Court.

On September 17, 2010, Haymer filed her initial complaint which was amended on February 16, 2011. The complaint now contains nine counts including violations of the Illinois Fairness in Lending Act ("IFLA") for improvident lending (Count I) and discrimination (Count VI), the Illinois Consumer Fraud Act ("ICFA") (Count III), and state law claims for fraud (Count II) and negligent misrepresentation (Count IV). The complaint also alleges violations of the Truth in Lending Act ("TILA") (Count V), the Civil Rights Act (Count VII), the Equal Credit Opportunity Act ("ECOA") (Count VIII), and the Fair Housing Act ("FHA") (Count IX). Counts I through IV are asserted against Countrywide, Valor, and Cieslak. Count V is asserted against Countrywide, BoA, and BAC. Counts VI through IX are asserted against Valor and Cieslak. Finally,

counts VII and VIII are individual and class claims against Valor and Cieslak. All Defendants now move to dismiss Haymer's complaint for failure to state a claim.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion, a complaint must overcome "two easy-to-clear hurdles:" (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has the right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (internal quotation marks omitted). Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (internal quotation marks omitted). The court must "take the complaint's well-pleaded factual allegations as true and draw all reasonable inferences in [plaintiff's] favor." *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010).

## DISCUSSION

### I. Counts I and VI - IFLA

Countrywide argues that Haymer's claim for improvident lending (Count I) under the IFLA should be dismissed because this claim is expressly prohibited by the

language of IFLA. For the same reason, Valor argues that Haymer's claims for improvident lending and for discrimination (Count VI) should be dismissed. IFLA states in part that "[i]f the same events or circumstances would constitute the basis for an action under this Act or an action under any other Act, the aggrieved person may elect between the remedies proposed by the two Acts but may not bring actions . . . under more than one of the two Acts in relation to those same events or circumstances." 815 Ill. Comp. Stat. 120/5(b). The plain language of the statute requires a plaintiff to choose between the IFLA or any other act that he wishes to pursue if the events which give rise to both claims are the same. As such, Haymer cannot successfully pursue claims under the IFLA, in addition to her other claims, because they all arise out of the January 2009 transaction. Accordingly, Count I is dismissed as to Countrywide and Valor, and Count VI is dismissed as to Valor.[2]

## II. Count II - Common Law Fraud

In Count II, Haymer alleges that Countrywide and Valor engaged in common law fraud when Valor failed to disclose Haymer's income information in the loan

---

[2] Haymer attempts to get around this reading by arguing that the legislative history suggests that the Act which is referred to in this statute is only the Illinois Human Rights Act. However, this argument contradicts the language of the statute which states that the other action could come "under any other Act." It is well settled that the plain language of a statute is the best evidence of its meaning and the most reliable indicator of congressional intent. *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Cullum Cos.*, 973 F.2d 1333, 1339 (7th Cir. 1992). Thus, when interpreting its meaning, we first look to the plain meaning of the statute. *See, e.g.,Meredith v. Bowen*, 833 F.2d 650. 654 (7th Cir. 1987).

application and when Countrywide failed to provide preliminary and closing documents, disclose the precise amount of the monthly repayments, and disclose Haymer's inability to repay the loan. Countrywide argues that Haymer's common law fraud claim fails because, among other reasons, she has not alleged that Countrywide had a duty to disclose information about her ability to repay the loan.

In Illinois, a common law fraud claim can be based on a fraudulent misrepresentation or on a fraudulent concealment of a material fact. *W.W. Vincent & Co. v. First Colony Life Ins., Co.*, 814 N.E.2d 960, 970 (Ill. App. Ct. 2004).

Haymer first argues that Valor's omission of Haymer's income information and Countrywide's ultimate approval of the loan constitute implicit fraudulent misrepresentations that she could afford to repay the loan, not fraudulent concealment of material facts. We decline to view these omissions as fraudulent misrepresentations for two reasons. First, in her complaint, Haymer does not allege with specificity that at any time during the 2009 transaction Countrywide or Valor explicitly told Haymer that she could afford the loan. *See* Fed. R. Civ. P. 9(b). Second, Haymer has not identified, nor has our research revealed, any authority that would allow us to conclude that the omission of a material fact constitutes an implicit representation.[3] Accordingly, the Court construes Count II of the complaint as a fraudulent concealment claim.

---

[3] Haymer points to *Martinez v. Freedom Mortgage Team, Inc.*, 527 F. Supp. 2d 827, 837 (N.D.Ill. 2007) in support of her argument. In *Martinez*, however, Defendants falsified information in plaintiff's loan application by inflating his income. This is not the case here.

In a fraudulent concealment claim, the plaintiff must allege that the defendant concealed a material fact when he had a duty to disclose it to plaintiff. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). A duty to disclose all material facts arises when plaintiff and defendant are in a fiduciary or confidential relationship. *Id; see also Connick*, 675 N.E.2d at 593 (Ill. 1996) (affirming dismissal of common law fraud claim where plaintiffs failed to allege they were in a fiduciary or other confidential relationship with defendants such that they had duty to disclose); *Thornwood, Inc., v. Jenner & Block*, 799 N.E.2d 756, 765 (Ill. App. Ct. 2003) ("[T]o prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak."). Here, Haymer fails to state a fraudulent concealment claim because she fails to adequately allege that Countrywide or Valor were in a confidential or other fiduciary relationship with her. In addition, with respect to Countrywide, the Court cannot discern any plausible basis upon which such a duty would exist between Countrywide and Haymer since the relationship between a lender and a borrower is not fiduciary in nature. *Bank Computer Network Corp., v. Cont'l Ill. Nat'l Bank & Trust Co.*, 442 N.E.2d 586, 594 (Ill. App. Ct. 1982). Because Haymer has failed to adequately allege a claim for common law fraud against Valor and Countrywide, Count II is dismissed.

**III.    Count III -  ICFA**

To state a claim under ICFA, a plaintiff must allege, among other elements, that: (1) the defendant engaged in a deceptive act or practice, and (2) the plaintiff suffered actual damages. 815 Ill. Comp. Stat. 505/2; *see also Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002); *Connick*, 675 N.E.2d at 593.

Countrywide first argues that Haymer cannot establish the element of deceptive practices under ICFA because she does not allege facts that would demonstrate concealment or omission of a material fact. Under ICFA, the omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. 815 Ill. Comp. Stat. 505/2. A material fact exists where a consumer would have acted differently knowing the information or if it concerned the type of information upon which he would be expected to rely in making his decision. *Connick*, 675 N.E.2d at 595. The omission of any material fact constitutes deceptive conduct. *Crowder v. Bob Oberling Enters., Inc.*, 499 N.E.2d 115, 118 (Ill. App. Ct. 1986). In the instant case, Haymer alleges that Countrywide and Valor deliberately excluded Haymer's income from the application process, concealed from her the fact the she could not afford to repay the loan, and finally approved the loan that they knew Haymer could not afford. The Court finds that Haymer has sufficiently pleaded allegations that could demonstrate concealment or omission of a material fact because concealing from a borrower the fact

that she cannot afford repayments can constitute information upon which it can be expected that she would rely on in deciding to apply for a loan. *See Fid. Fin. Servs., Inc., v. Hicks*, 574 N.E.2d 15, 20 (Ill. App. Ct. 1991) (finding that plaintiff sufficiently stated deceptive practices in violation of ICFA when she alleged that mortgagee knowingly structured the loan to create payments and charges mortgagor could not afford).[4]

Countrywide and Valor next argue that Haymer's ICFA claim should be dismissed because she has not pleaded and proved actual damages. Concretely, Defendants submit that Haymer not only did not suffer any financial hardship but actually benefited from the January 2009 loan because it reduced her monthly payments from $931 to $846.16, reduced her interest rate from the previous 6% to 5%, and, as a result, placed her in a better financial position than before. Defendants also contend that even though the principal amount of her mortgage was increased as a result of the loan (going from $156,325.06 to $157,624), Haymer cannot claim she was stripped of equity in her home because she recouped all the additional costs she incurred when Valor

---

[4] Because the Court has concluded that Haymer has sufficiently alleged deceptive practices under ICFA, it is unnecessary to address the parties' argument relating to "unfair" conduct. *See Robinson v. Toyota Motor Credit Corp,.* 775 N.E.2d 951, 960 (Ill. 2002) (holding that ICFA prohibits deceptive acts and practices as well as unfair ones). In addition, the Court declines to address the proximate causation argument because even though Countrywide refers to it, it has failed to sufficiently develop the argument and identify relevant authority. *Otto v. Variable Annual Life Ins., Co,.* 134 F.3d 841, 855 (7th Cir. 1998).

offered her a brokers credit of $1,537.23. Defendants are correct that a plaintiff must suffer a harm to sue. *See* 815 Ill. Comp. Stat § 505/10a(a). However, the Court concludes that Haymer has met the actual damages requirement for three reasons. First, the argument that Haymer in reality benefited from the transaction is misleading. Even if Countrywide and Valor lowered Haymer's monthly payments, it still could have imposed an injury (of $846.16) if, under the circumstances, the loan was fraudulently approved. Haymer may have suffered a smaller injury, but an injury nonetheless. Second, in her complaint, Haymer alleges that Defendants charged higher closing fees and a higher interest rate than the one she qualified for in order to finance a higher yield spread premium in Valor's favor. Further, Haymer alleges that Defendants increased the principal balance of her mortgage, decreased the equity on her house, damaged her credit score, and imposed refinancing on her when other alternatives were available. Therefore, Haymer has sufficiently plead actual economic injury. Finally, although Countrywide and Valor may in the end prevail in arguing that Haymer actually benefited from the 2009 loan, it is the Court's duty, in a motion to dismiss, to draw reasonable inferences, as to the existence and size of the damages, in plaintiff's favor. Accordingly, we decline to dismiss the ICFA claim on this basis.

Countrywide next argues that, under ICFA, Haymer cannot recover for emotional distress damages. However, it is well established that, in Illinois, actual damages

include compensation for mental suffering. *Roche v. Fireside Chrysler-Plymouth, Mazda, Inc.*, 760 N.E.2d 1218, 1228 (Ill. App. Ct. 1992) (holding that a jury award of $750 for "aggravation and inconvenience" for violation of the ICFA was not erroneous).

Countrywide finally argues that this Court should dismiss Haymer's ICFA claim to the extent that Haymer asserts that Countrywide violated ICFA by paying Valor an illegal yield spread premium ("YSP") with respect to the January 2009 mortgage loan. To state a claim under ICFA based on the payment of a YSP, a plaintiff must allege that the total compensation paid to the broker was not reasonably related to the total value of the services actually provided. *Johnson v. Matrix Fin. Servs. Corp.*, 820 N.E.2d 1094, 1103-04 (Ill. App. Ct. 2004). Here, Haymer not only fails to dispute Countrywide's argument but also fails to allege that the services were not reasonably related to the compensation Valor received. Accordingly, Haymer cannot base her ICFA claim on the payment of an illegal YSP. Based on the foregoing analysis, the Court declines to dismiss Count III.

**IV.   Count IV - Negligent Misrepresentation**

Countrywide and Valor argue that Haymer cannot maintain a negligent misrepresentation claim because, in light of *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982), it is barred by the economic loss doctrine.

In *Moorman*, the Illinois Supreme Court held that a plaintiff cannot recover for solely economic loss under the tort theories of negligent misrepresentation. *Id*. at 453. The court defined "economic loss" as "'damages for inadequate value . . . or consequent loss of profits - without any claim of personal injury or damage to other property.'" *Id*. at 449. In other words, tort law supplies the proper remedy for losses arising from personal injuries or damage to one's property, whereas contract law provides the proper remedy for economic losses arising from diminished commercial expectations without related injuries to persons or property. *See In re Ill. Bell Switching Station Litig.*, 641 N.E.2d 440, 444 (Ill. 1994). There are two exceptions to this doctrine. First, the doctrine does not bar a claim for personal injury or property damage that arises from negligent misrepresentations made by persons who are in the business of providing information. *See In re Chi. Flood Litig.*, 680 N.E.2d 265, 275 (Ill. 1997). Second, "a claim for economic loss may be pursued in tort as well as contract where . . . the claim is founded on a duty of care that the law imposed on the defendant irrespective of the terms of the contract." *Mut. Servs. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 617 (7th Cir. 2001). That is to say, "[w]here a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 636 N.E.2d 503, 514 (Ill. 1994).

In the instant matter, the Court is reluctant to dismiss Count IV for the following reasons. First, Haymer alleges that "defendants failed to take precautions against creating an unreasonable risk of injury . . . such as her . . . severe emotional and physical distress stemming from the imminent prospect of losing her home." Although Countrywide argues that the Court should disregard Haymer's emotional and mental pain because the "bulk" of her allegations are economic, it has not identified authority supporting this position. Because Haymer has alleged more than purely economic losses, dismissal of count IV is not warranted. *See Geimer v. Bank of Am., N.A.*, No. 10 C 41, 2011 WL 1099269, at *7, n.2, (N.D. Ill. Mar. 21, 2011) (holding that mortgagor's allegations of embarrassment, humiliation, emotional and mental pain, and anguish resulting from mortgagee's conduct could support a negligence claim). Second, Haymer alleges that Defendants breached their duty to "accurately represent, describe[,] and explain the terms of the loan" and that this duty "arose outside of the note and mortgage." This allegation is sufficient, at the pleadings' stage, to state a claim for negligent misrepresentation. The Court is well aware of Countrywide's argument that Illinois courts suggest that duties owed by lenders to borrowers arise only by contract.[5] However, the Seventh Circuit has held that "a bank's failure to observe ordinary care in handling its customer's transactions may support a tort claim notwithstanding

---

[5] Valor does not dispute Haymer's allegation that Valor, as a broker, could owe a duty of care to a mortgagor.

*Moorman*'s commercial loss doctrine" because "the law has long imposed on banks a duty of reasonable care." *Mut. Serv. Casualty Ins. Co.*, 265 F.3d at 618 (citing *Menerey v. Citizens First Nat'l Bank*, 513 N.E.2d 553, 554 (1987)); *see also Rogers v. Bank of America, N.A.*, No. 10 C 375, 2010 WL 4384257, at *3-4 (S.D. Ill. Oct. 28, 2010) (denying bank's motion to dismiss plaintiff's negligence claim because, after *Mutual Service*, the bank's failure to observe reasonable care could arguably support a negligence claim in Illinois). "While the determination of the existence of a duty is a question of law for the court to decide, such a determination . . . is more properly made after discovery has been completed and all the facts have been presented via a motion for summary judgment." *Gaudie v. Countrywide Home Loans, Inc.*, 683 F. Supp. 2d 750, 761 (N.D. Ill. 2010). Accordingly, Countrywide's and Valor's motions to dismiss the negligent misrepresentation claim are denied.

## V.     Count V - TILA

Countrywide argues that Haymer's TILA claim is time-barred by the one year statute of limitations. Pursuant to 15 U.S.C § 1640(e), TILA actions must be brought within one year from the date of the violation. A transaction is consummated on the date the loan is closed. *See, e.g., Jenkins v. Mercantile Mortg. Co.*, 231 F. Supp. 2d 737, 745 (N.D. Ill. 2002) (noting that plaintiffs become contractually obligated on the closing date of their loans). Here, Haymer's claim is untimely on its face because she filed her

original complaint on September 17, 2010, almost two years after the loan was consummated in January 2009.

In response, Haymer argues that the statute of limitations does not apply where a claim for damages under TILA is asserted as a defense by way of recoupment. Section 1640(e) allows a party to assert a violation of TILA "in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action." Haymer contends that her action in reality constitutes a "defensive measure" or a "recoupment" against the pending foreclosure action which was filed in state court. We disagree. Haymer's action before the federal courts alleges misconduct and seeks damages that go beyond the state foreclosure action. In the present action, Haymer has not alleged wrongful foreclosure. As such, Haymer's claims cannot be viewed as "defensive measures" with respect to the state proceedings. In addition, in Count V, Haymer alleges "grounds for rescission" of the loan, not recoupment. "[R]ecoupment of damages and rescission in the nature of recoupment receive unmistakably different treatments." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 418 (1998). Thus, Haymer's TILA claim cannot be construed as a defense by way of recoupment. Haymer's claims for statutory damages under TILA are untimely and fail as a matter of law against all parties.[6]

---

[6] Because Plaintiff's claims for damages under TILA are time-barred, the Court need not address the parties' arguments regarding BoA and BAC as well as the election of remedies.

## VI. Counts VII, VIII, IX - Discrimination Claims

In Counts VII, VIII, and IX, Haymer alleges discrimination claims against Valor under Section 1981 of the Civil Rights Act, the ECOA, and the FHA. Valor argues that all three discrimination claims should be dismissed because Haymer fails to allege Valor had a discriminatory intent. Here, Haymer alleges that Valor singled her out by charging her and other minorities higher closing fees and higher interest rates than it charges similarly situated Caucasian borrowers. Taking these allegations as true, it is plausible that Valor may have targeted Haymer and other minorities on the basis of her race, marital status, and geographic location of her property. The motion to dismiss Counts VII, VIII, and IX is denied.[7]

## VII. Counts VII and VIII - Class Claims

Valor moves to dismiss Haymer's class claims in Counts VII and VIII. Specifically, Valor argues that Haymer's proposed class fails to meet the numerosity and typicality requirement of Federal Rule of Civil Procedure 23. Such determinations, however, are premature at this point in the litigation, when there is no motion for class certification pending. *See Eggleston v. Chi. Journeymen Plumbers' Local Union No.*

---

[7] Although Valor argues that a necessary element in an FHA and ECOA claim is that the plaintiff must have applied for a loan and have been rejected, the FHA prohibits discrimination in real estate related transactions and the ECOA prohibits discrimination in credit transactions. *See* 42 U.S.C. § 3605; 15 U.S.C. § 1691.

*130, U.A.*, 657 F.2d 890, 895 (7th Cir. 1981) (stating that "some degree of discovery may be appropriate in certain cases to aid making the necessary class determinations [and that] [t]he pleadings are expected to be of assistance, but more information may be needed"); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76 (7th Cir. 2001) (distinguishing between a district court's role at the motion to dismiss stage and the class certification stage). Accordingly, the motion to dismiss the class claims is denied.

**VIII. Counts I - IV and VI - IX: Piercing the Corporate Veil**

In Counts I to IV and VI to IX, Haymer asks the court to pierce the corporate veil to hold Cieslak individually liable for Valor's alleged fraudulent conduct because Valor is Cieslak's *alter ego*. In Illinois, a limited liability company is a legal entity separate from its members. 805 Ill. Comp. Stat. 180/5-1. The power of courts to pierce the corporate veil is exercised reluctantly and cautiously. *C M Corp. v. Oberer Dev. Co.*, 631 F.2d 536, 541 (7th Cir. 1980). A court may pierce the veil when the corporate entity "would otherwise present an obstacle to the protection of private rights, or where the corporation is merely the *alter ego* . . . of the governing or dominant personality." *State of Ill. v. V & M Indus. Inc.*, 700 N.E.2d 746, 751 (Ill. App. 1998). To disregard the corporate entity, a plaintiff must plead (1) that there is such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that failure to pierce the corporate veil would promote injustice or

inequity. *Melko v. Dionisio*, 580 N.E.2d 586, 594 (1991). To determine whether a unity of interest and ownership exists, the court considers among other factors: (1) the failure to comply with corporate formalities or maintain adequate corporate records; (2) commingling of funds or assets; (3) undercapitalization; or (4) whether the corporation is a mere facade for the operation of dominant stockholders. *V & M Indus. Inc.*, 700 N.E.2d at 751.

Haymer has not sufficiently alleged a unity of interest and ownership between Valor and Cieslak. Haymer alleges that Cieslak is Valor's sole owner and registered agent, works there as a loan officer, participates in all credit decisions, establishes all policies and procedures relating to the setting of closing fees and interest rates, and supervises all employees in the execution of all policies. These allegations suggest nothing more than what every sole owner of a brokerage company is required to do. Haymer further alleges that "like most mortgage brokers, Valor . . . holds few to no assets, is undercapitalized, and exists merely as a business shell or conduit for its owner to make money." These conclusory allegations, without more, are insufficient to warrant piercing of the corporate veil. *See Club Assistance Program, Inc., v. Zukerman*, 594 F.Supp. 341, 351 (C.D. Ill. 1984). In addition, Haymer's claims against Cieslak fail to establish that failure to pierce the corporate veil would promote injustice or inequity. The only allegations that remotely support such a theory is Haymer's claim that Cieslak

intentionally suppressed Haymer's income information to generate closing fees, concealed the repayment amount, and conducted the deceptive closing. These allegations do not support a claim to pierce the corporate veil because Haymer has not demonstrated how failure to pierce the veil would present an obstacle to the protection of private rights or would promote injustice or inequity. Haymer has pleaded insufficient facts to support its alter ego theory and the Court will not pierce the corporate veil on that basis. Accordingly, all counts against Cieslak are dismissed.

## CONCLUSION

Based on the foregoing analysis, Cieslak's motion to dismiss is granted; Valor's and Countrywide's motions to dismiss are granted in part and denied in part.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:  July 15, 2011