IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HELEN HAYMER, | ) | |
| | ) | |
| Plaintiff, | ) | 10 CV 5910 |
| | ) | |
| v. | ) | The Honorable Charles P. Kocoras |
| | ) | U.S. District Court Judge |
| COUNTRYWIDE BANK, FSB; BANK OF AMERICA, N.A.; BAC HOME LOANS SERVICING, LP f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP; VALOR FINANCIAL SERVICES, LLC; and JOHN DOES 1 – 5, | ) ) ) ) ) | The Honorable Sheila M. Finnegan U.S. District Magistrate Judge  **Jury Demanded** |
| Defendants. | ) ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT BANA'S MOTION FOR MENTAL EXAMINATION/
<u>PLAINTIFF'S MOTION FOR PROTECTIVE ORDER</u>**

Plaintiff Helen Haymer respectfully submits the following response to the motion for mental examination filed by defendants Countrywide Bank, FSB, Bank of America, N. A., and BAC Home Loans Servicing, LP (collectively, "BANA") and the following motion for protective order:

**I.      INTRODUCTION**

BANA's sloppy, last-minute request for a mental examination of plaintiff comes months and even years late, according to controlling 7th Circuit precedent, and should be denied on this ground alone. BANA has not even bothered to explain the reasons for its tardy request. In any event, the weight of case law indicates that plaintiff has not placed her mental condition in genuine controversy because she asserts a garden variety claim of emotional distress. Further, even if an exam may be warranted, BANA has failed to provide the Court with sufficient

1

information from which to determine whether it has met the "in controversy," "good cause" and other requirements. BANA omits key, critical details regarding the proposed exams and the examiner and provides absolutely no documentary or testimonial support for its proposed structure for the exam. Finally, if the Court is at all inclined to order some examination, its order should address each of the valid concerns raised below by plaintiff.

**II.  RELEVANT PROCEDURAL FACTS**

Plaintiff's Second Amended Complaint ("SAC") containing allegations of emotional distress was filed two years ago - on February 16, 2011. (Case document #41). Discovery in this case commenced in late 2011. On September 17, 2012, during fact discovery, plaintiff produced her Cook County hospital medical records, which contain entries concerning emotional distress caused by a pending foreclosure case. (E-mail correspondence between Samuels and Nall, attached as <u>Exhibit B</u>). Moreover, fact discovery in this case has been extended several times; on September 25, 2012, it was extended a final time to October 30, 2012. (Case document #205). At all three sessions of plaintiff's deposition on October 3, 10 and November 19, 2012, BANA's counsel (as well as plaintiff's counsel, on re-direct) specifically and repeatedly asked plaintiff about her emotional distress. (e.g., Oct. 10 trans., 98-106, a copy of which is attached hereto as <u>Exhibit C</u>). Further, on October 26, 2012, plaintiff filed her motion to quash BANA's subpoena to Dr. Liu as plaintiff's treating physician, which explicitly informed BANA and the Court that Dr. Liu would be one of plaintiff's expert witnesses. (Case document #213). Further, plaintiff disclosed Dr. Lieu's expert report on November 30, 2012, and BANA took and completed Dr. Liu's deposition, both as treating physician and as plaintiff's expert, on December 19, 2012. Finally, on December 3, 2012, the Court entered an order requiring defendants expert disclosures to be made February 21, 2013. (Case document #231).

2

Nevertheless, BANA waited until January 28, 2013, to file the present motion with the Court, after raising the issue with plaintiff for the very first time on January 23, 2013. (Case document # 256; e-mail correspondence between Nall and Hofeld, attached hereto as <u>Exhibit A</u>).

### III. APPLICABLE LEGAL STANDARDS

Fed. R. Civ. Pro. 35(a)(1) states in relevant part: "The court… may order a party whose mental or physical condition… is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." 35(a)(2) states that "[t]he order may be made only on motion for good cause…." Finally, any such order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Id.

"Mental… examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by [Rule 35]." *Schlagenhauf v. Holder*, 379 U. S. 104, 121 (1964). The moving party bears the burden of affirmatively showing that the "in controversy" and "good cause" requirements have been met. *Walti v. Toys R US*, 2011 U. S. Dist. LEXIS 97788, *5 (N. D. Ill.). Rule 35 is the only discovery rule in the Rules of Federal Procedure that contains the restriction that the matter on which discovery is sought must be "in controversy" and a requirement that the discovering party sufficiently demonstrate "good cause." *Schlagenhauf v. Holder*, 379 U. S. at 117. With all other discovery devices, a party may proceed without leave or even knowledge of Court; under Rule 35, a party may not proceed without express, advance leave of Court. Id. Under Rule 35, good cause is not established "by merely showing that the desired materials are relevant…." (Id., 118). Rather, a greater showing than relevance is required of the movant than under other discovery rules in order to establish "good cause." Id. Further, the "in controversy" and "good cause" requirements are not a mere

3

formality that can be satisfied by conclusory allegations. (Id.). Rather, they "require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." (Id.). The Rule's requirements of "in controversy" and "good cause" are not necessarily related. (Id., 118-119). In this case, BANA has not even cited *Schlagenhauf.*

## IV. ARGUMENT

### A. BANA's Motion Should Be Denied As Untimely and Because it Will Further Delay the Case

As a preliminary matter, BANA's motion must be denied as untimely under 7th Circuit case law. *Miksis v. Howard*, 106 F. 3d 754, 758-59 (7th Cir. 1997); *Balzer v. Am. Family Ins. Co.*, 2010 U. S. Dist. LEXIS 44460 (N. D. Ind.). In *Miskis*, the 7th Circuit affirmed a District Court's denial of a defendant's request for a Rule 35 examination when the request was made after the close of fact discovery but before the end of the expert disclosure period. The Court rejected the defendant's argument that the need for a Rule 35 examination was only known after the plaintiff disclosed that he would offer expert testimony; it also rejected the request because plaintiff's medical condition had been at issue from the start of the case.

In this case, plaintiff's Second Amended Complaint ("SAC") contains clear allegations of emotional distress. Ms. Haymer alleges that, as a result of BANA's filing of a foreclosure action against her in 2009, she has suffered "emotional and physical distress at the prospect of losing her home." (SAC, ¶¶ 57 – 59). In particular, she alleges:

> **Ever since she has been unable to make payments and began to worry about losing her home, she has suffered from fitful and interrupted sleep. The worry that she will lose her home has been constantly on her mind during the last two years. Ms. Haymer's blood pressure has been persistently elevated during**

4

> this period, even though her doctor has increased the dosage of her blood pressure medications.

(Id., ¶60). Plaintiff's SAC was filed two years ago - on February 16, 2011. (Case document #41). Discovery in this case commenced in late 2011. On September 17, 2012, during fact discovery, plaintiff produced her Cook County hospital medical records, which contain entries concerning emotional distress caused by a pending foreclosure case. (e-mail correspondence between Samuels and Nall, attached as Exhibit B). Moreover, fact discovery in this case has been extended several times; on September 25, 2012, it was extended a final time to October 30, 2012, a date of which BANA was well-aware. (Case document #205). At all three sessions of plaintiff's deposition on October 3, 10 and November 19, 2012, BANA's counsel (as well as plaintiff's counsel, on re-direct) specifically and repeatedly asked plaintiff about her emotional distress. (e.g., Oct. 10 trans., 98-106, a copy of which is attached hereto as Exhibit C). Further, on October 26, 2012, plaintiff filed her motion to quash BANA's subpoena to Dr. Liu as plaintiff's treating physician, which explicitly informed BANA and the Court that Dr. Liu would be one of plaintiff's expert witnesses. (Case document #213). Further, plaintiff disclosed Dr. Lieu's expert report on November 30, 2012, and BANA took and completed Dr. Liu's deposition, both as treating physician and as plaintiff's expert, on December 19, 2012. Finally, defendants have been aware since December 3, 2012, that their expert disclosures were due February 21, 2013. (Case document #231). Nevertheless, BANA waited until January 28, 2013, to file the present motion with the Court, after raising the issue with plaintiff for the very first time on January 23, 2013. (Case document # 256; e-mail correspondence between Nall and Hofeld, attached hereto as Exhibit A).

> *"Certainly, a party who anticipates the need for an independent examination should seek an order under Rule 35 as soon as possible. Making arrangements for such examinations takes time and can delay the progress of the case. If the examination is opposed, as it was here, resolving the motion also takes time. In some cases, the schedule simply will not accommodate that time if the motion is brought late in the discovery process."* Walti v. Toys R US, 2011 U. S. Dist. LEXIS 97788, *21-22 (N. D. Ill.)(emphasis added).

BANA has not even attached an affidavit to its motion explaining its failure to file the present motion sooner, during fact discovery, as required by controlling 7th Circuit precedent. For these reasons, the Court should exercise its discretion to deny BANA's extremely tardy request for a mental examination.

### B. BANA's Motion Should Be Denied Because Plaintiff Makes a Simple Claim of Emotional Distress as Part of Her Overall Damages

Plaintiff's mental condition is not "in controversy" in this case. A simple claim of emotional distress damages, such as plaintiff makes here, is insufficient to place her mental condition "in controversy." Rather, "...[T]he clear weight of authority on this issue shows that a simple claim of emotional distress does not automatically justify a Rule 35 order compelling an examination." *Nolan v. Int'l Bhd. Of Teamsters Health & Welfare & Pension Funds, Local 705*, 199 F. R. D. 272, 275 (N. D. Ill. 2001)(collecting cases).

In *Nolan*, the Court held that "a claim for damages sounding in 'emotional pain, suffering, inconvenience, and mental anguish" was not sufficient to place the plaintiff's mental state "in controversy." Id. In *Nolan*, the Court stated:

> **...courts would be setting bad precedent and overstepping the limitations imposed by Rule 35 if they were to allow psychological examinations in every case where a plaintiff claimed damages for emotional distress or mental anguish of**

6

> **the type that any well balanced individual would experience as the victim of discrimination.**

Id. Numerous other jurisdictions have agreed. *See, e.g., O'Sullivan v. Minnesota*, 176 F. R. D. 325 (Dist. Minn. 1997)(bare and boilerplate allegations of mental anguish and emotional distress provide legally insufficient basis for concluding that plaintiff's mental condition is genuinely in controversy or that good cause exists for ordering examination); *Ford v. Contra Costa County*, 179 F. R. D. 579 (N. Dist. Cal. 1998)(plaintiff's claim for emotional and mental distress, and associated prayer for damages, does not, by itself, place her mental condition in controversy); *Kankam v. Univ. of Kan. Hosp. Auth.*, 2008 U. S. Dist. LEXIS 73318 (Dist. Kan.)(garden variety emotional distress claims, including claims for damages for mental anguish and mental distress, do not place plaintiff's mental condition "in controversy" for purposes of justifying mental examination under Fed. R. Civ. Pro. 35).

Plaintiff's allegations in this case do not go beyond the "garden variety" type of mental or emotional distress that "a well balanced individual would experience" under similar circumstances. *Nolan v. Int'l Bhd. Of Teamsters Health & Welfare & Pension Funds, Local 705*, 199 F. R. D. at 275. In fact, foreclosure is recognized in the law of this Circuit and District as being a *per se* cause of emotional distress to a homeowner precisely it is the type of stress that people commonly experience under such circumstances. *Parks v. Wells Fargo Home Mortg., Inc.*, 398 F.3d 937, 941 (7th Cir. 2005)("We have no doubt that anyone would suffer emotional harm from losing his or her home, or even from facing such a possibility"); *Matthews v. Homecomings Fin. Network*, 2005 U.S. Dist. Lexis 21535 (N.D. Ill. 2005); *Johnstone v. Bank of Am., N.A.*, 173 F. Supp. 2d 809 (N.D. Ill. 2001)(possibility of foreclosure sufficient to state emotional distress damages and survive motion to dismiss RESPA claim); *Stafford v. Puro*, 63

F.3d 1436, 1442 (7th Cir. 1995)(loss of home and high blood pressure); *Peeler v. Kingston Mines*, 862 F.2d 135, 136 (7th Cir. 1988)(homelessness, high blood pressure and difficulty sleeping). Finally, it is eminently reasonable for someone in Ms. Haymer's position – elderly, widowed, childless, subsisting on Social Security and food stamp benefits and with no savings or other assets – to experience distress from a foreclosure filed against her home.

Plaintiff's claim for emotional distress is also "garden variety" because it lacks the various prerequisites identified in case law as affirmatively putting mental condition "in controversy." In this case, plaintiff has not asserted a cause of action for intentional or negligent infliction of emotional distress, made an allegation of a specific mental or psychiatric injury or disorder, and has not conceded that her mental condition is "in controversy." *Cf., e.g., Mitchell v. Iowa Interstate Railroad, Ltd.*, 2009 U. S. Dist. LEXIS 68376, *3 (C. Dist. Ill. Further, in contrast to the decisions that have found a plaintiff's mental condition to be genuinely "in controversy," Ms. Haymer neither claims nor has: any formal diagnosis of depression, anxiety, Post-Traumatic Stress Disorder (or any other mental or emotional condition, for that matter), any permanent or continuing psychological injury for which she seeks compensation[1], and she has neither sought nor received treatment with medication or with any other therapy for any mental or emotional symptom. *Cf., id.; Walti v. Toys R US*, 2011 U. S. Dist. LEXIS 97788, *5-6 (N. D. Ill.)(court found determinative facts that plaintiff had Post-Traumatic Stress Syndrome and other mental disabilities, did not contest that his mental condition was in controversy, had a previous injury for which he also claimed emotional distress, and alleged continuing harm, not just past

---

[1] Once BANA dismisses its foreclosure complaint, the plaintiff will cease experiencing emotional distress. She does not allege and her treating physician did not testify that she has a lasting or permanent injury. On the contrary, Dr. Liu testified, for instance, that plaintiff does not suffer from Post-Traumatic Stress Syndrome.

8

harm); *Chrissafis v. Continental Airlines, Inc.*, 1997 U. S. Dist. LEXIS 12800, *3 (N. D. Ill.); *Bovey v. Mitsubishi Motor Manuf. Of America, Inc.*, 2002 U. S. Dist. LEXIS, *3 5701 (C. Dist. Ill.)(court found determinative fact that plaintiff had five mental health care providers who provided treatment and counseling); *Mitchell v. Iowa Interstate Railroad Ltd.*, 2009 U. S. Dist. LEXIS 68376, *4-5 (C. Dist. Ill.)(court found determinative fact that plaintiff had a chronic, progressive disease characterized by severe pain); and *Allhouse v. JBL Limited*, 2006 U. S. Dist. LEXIS 18885, *4 (N. Dist. Ill.)(court found determinative fact that plaintiff had a claim for intentional infliction of emotional distress). Further, there have been no allegations or evidence that Ms. Haymer has a history of emotional distress, anxiety or depression, other than that suffered because of the October, 2009 foreclosure filing. Therefore, there is no need for BANA to discover whether the distress was caused or exacerbated by a history of distress or by events other than BANA's origination of a loan that was designed to fail and BANA's foreclosure filing. *Walti v. Toys R US*, 2011 U. S. Dist. LEXIS 97788, *8 (N. D. Ill.). Thus, it is clear that Ms. Haymer's mental condition has not been placed "in controversy."

Finally, BANA argues that the large dollar amount that plaintiff's damages expert, Dr. Smith, places on her loss of enjoyment of life or emotional distress is relevant to the "in controversy" and "good cause" analyses. On the contrary, it does not even enter into the equation, and BANA cites no authority for its argument. The only case that appears to support its argument, *Walti v. Toys R Us*, 2011 U. S. Dist. LEXIS 97788, *6 (N. D. Ill.), relies solely on a terse, Central District of Illinois decision, *Bovey v. Mitsubishi Motor Manuf. Of Am., Inc.*, 2002 U. S. Dist. LEXIS 5701, *2-3, which itself cites absolutely no authority for the point. Further, Dr. Smith's loss of enjoyment analysis does not in any way depend upon Dr. Lieu's conclusions.

9

Dr. Smith only interviewed plaintiff and read her deposition testimony; he testified he has not seen Dr. Liu's expert report or deposition testimony.

      **C.**    **BANA's Motion Should Be Denied Because BANA Has Failed to Provide the Court with Sufficient Information to Determine Whether They Have Met "In Controversy," "Good Cause" and Other Requirements**

BANA's motion simply fails to present sufficient information to allow the Court to fulfill its function as mandated by Rule 35. *Schlagenhauf v. Holder*, 379 U. S. at 119. Rather, BANA presents very limited information, essentially saying to the Court and plaintiff with respect to the entire procedure, "Trust us." To read BANA's motion is to come away with the impression that BANA thinks *it* makes the decision about the examiner, the scope of the examination, and other parameters. In particular, for the reasons set forth below, BANA has failed to show that its only proposed examiner, Dr. Swantek, is "suitably licensed or certified," Rule 35(a)(1), and has failed to properly "specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." Fed. R. Civ. Pro. 35(a)(2)(B).

    **Proposed Exams**. First of all, it is unclear whether is BANA requesting a mental examination or a mental examination and a physical examination. BANA's motion refers only to a mental examination, (Motion, pp. 1, 3, 4, 5, 6); however, BANA's correspondence with plaintiff days before it filed its motion indicates that "particular testing may have a physical exam component." (Nall e-mail to Hofeld, Jan. 25, 2013, 3:33PM, <u>Exhibit A</u>). If Dr. Swantek anticipates that a physical examination will or may be part of the overall examination, BANA should have specified and explained this contingency in detail in its motion, including the type(s) of exam(s) that could be administered. BANA's motion fails to attach any affidavit from Dr. Swantek that addresses these important issues.

10

Second, it is black-letter law that the "in controversy" and "good cause" requirements must be satisfied "for each condition as to which the examination is sought is really and genuinely in controversy *and that good cause exists for ordering each particular examination*" that BANA proposes. *Schlagenhauf v. Holder*, 379 U. S. 104, 118 (1964)(emphasis added). Yet BANA has not even attempted to make such a showing for even one of the four proposed exams. (Motion, p. 5).

Third, while BANA's motion generically proposes four standardized psychological exams by name, BANA fails to provide the Court with any description or specific details about any of them, including information about what specific conditions or symptoms they examine for. (Motion, p. 5). For instance, what types of issues or questions the "personal health questionnaire" contains is anyone's guess. It is also anyone's guess as to whether any of the four exams test for insomnia or limitations in functioning due to emotional distress – both of which are symptoms plaintiff testified she experienced and experiences.

Fourth, BANA provides no indication of whether (a) the four proposed tests represent the entire menu of tests that could be performed given plaintiff's allegations of emotional distress, (b) whether there are other tests that might be appropriate, and (c) does not provide any explanation or rationale for the selection of these particular tests, which decision was apparently made by Dr. Swantek. (Id.). Again, BANA fails to attach any affidavit from Dr. Swantek that provides such crucial information for the Court's consideration.

Fifth, BANA has proposed no limits whatsoever on the time for the examination(s).

Sixth, the proposed date and time of the examination set forth in BANA's motion was scheduled without any consultation whatsoever with the plaintiff or her counsel. (Motion, p. 1).

**Examiner**. First, BANA has only recommended a single examiner for the Court's consideration. Normally, the Court chooses among at least two proposed examiners; the opposing party would have an opportunity to make a recommendation; or the Court would order the parties to confer in attempt to reach agreement on the examiner and other details.

Second, BANA fails to demonstrate for the Court that the sole examiner it proposes to the Court, Dr. Swantek, is "a suitably licensed or certified examiner." Rule 35(a)(1). All of the information BANA's motion presents about Dr. Swantek is asserted in conclusory fashion. For instance, BANA simply asserts, without any documentary or testimonial support, that Dr. Swantek is "a licensed board certified geriatric psychiatrist…." (Motion, p. 5). BANA did not attach copies of licenses or certifications. Nor does BANA present any detailed information, let alone documentary or testimonial evidence (such as a CV or affidavit), regarding Dr. Swantek's credentials, qualifications or experience in actually administering psychological evaluations. In BANA's mind, the mere title of "Director of Geriatric Psychiatry for the Northwestern University Feinberg School of Medicine" is supposed to induce the Court to question BANA's recommendation no further. (Motion, p. 5).

Third, BANA has three times represented to plaintiff that the proposed examiner and/or exam will be "independent." (Nall e-mail to Hofeld, January 25, 2013, 3:33PM, <u>Exhibit A</u>). Yet BANA has completely refused to disclose or explain the nature of BANA's, its individual attorneys' or their law firm Bryan Cave's relationship(s) with Dr. Swantek. (Id.; Nall e-mail to Hofeld, January 25, 2013, 5:12PM, <u>Exhibit A</u>). If Dr. Swantek is BANA's expert on

12

plaintiff's alleged emotional distress, such information would be useful to the Court and plaintiff in understanding whether the examination could be fair as well as in fashioning appropriate parameters. If Dr. Swantek is BANA's expert, then this raises the question of bias, and the Court should be presented with additional examiners from which to choose, including at least one that plaintiff proposes or on which the parties can agree. Further, if Dr. Swantek is BANA's expert and if the Court allows her to conduct the examination, then the examination would inevitably be adversarial in nature, and plaintiff is entitled to have a third party present at the examination and to have it recorded.

If BANA's paid expert in this case (and not an independent examiner) conducts the mental examination of plaintiff, an unsupervised examination could easily be conducted in biased fashion, exceed the limits of the Court-ordered exam, or could be transformed into a *de facto* deposition where plaintiff is not represented by counsel. *Zabkowicz v. The West Bend Company*, 585 F. Supp. 635, 636 (Dist. E. Wis., 1984). In *Zabkowicz*, defendants sought a court order permitting their psychiatrist to examine the plaintiffs without the presence of a third party or a recording device. The Court denied the requested for unsupervised examination, reasoning that, in such circumstances, "in the context of an adversary proceeding, the plaintiffs' interest in protecting themselves from unsupervised interrogation by an agent of their opponents outweighs the defendants' interest in making the most effective use of their expert." Id. The Court allowed plaintiffs to have a third party (including counsel) or a recording device at the examination. Id. In this case, Ms. Haymer requests the same protection from the Court.

### D. In the Alternative, Should the Court Grant BANA's Motion, the Scope and Particulars of the Proposed Exam Need Serious Attention

13

In the alternative, should the Court decide to order some mental examination of the plaintiff, plaintiff argues and respectfully requests that the Court's order be carefully fashioned in light of the concerns over the examiner and the parameters that plaintiff articulates in the immediately preceding section C.

## V. CONCLUSION

For at least the reasons set forth above, the Court should deny BANA's motion for mental examination, grant plaintiff's motion for protective order or, in the alternative, enter an order for an examination that is modified from BANA's request to address the concerns raised above.

Respectfully Submitted,

By: <u>s/Al Hofeld, Jr.</u>
Al Hofeld, Jr.

Al Hofeld, Jr.
LAW OFFICES OF AL HOFELD, JR., LLC
and The Social Justice Project, Inc.,
1525 East 53rd Street, Suite 832
Chicago, Illinois 60615
(773) 241-5844
(773) 241-5845 (FAX)
www.al@alhofeldlaw.com

14

## NOTICE OF FILING AND CERTIFICATE OF SERVICE BY ELECTRONIC MEANS

    I, Al Hofeld, Jr., attorney for plaintiff, hereby certify that on February 11, 2013, filing and service of the foregoing ***Plaintiff's Response In Opposition to Defendant BANA's Motion for Mental Examination,*** was accomplished pursuant to ECF as to Filing Users, and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

                                                            <u>s/Al Hofeld, Jr.</u>
                                                            Al Hofeld, Jr.