**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **HELEN HAYMER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10 C 5910** |
| | ) | |
| **COUNTRYWIDE BANK, FSB, et al.,** | ) | **Judge Charles P. Kocoras** |
| | ) | **Magistrate Judge Finnegan** |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Helen Haymer has filed suit charging several entities and one individual with mortgage loan fraud. In the current motion, Defendants Bank of America, N.A., Countrywide Bank, FSB, and BAC Home Loans Servicing, LP (collectively "BANA") seek an order requiring Plaintiff to undergo a mental examination pursuant to Federal Rule of Civil Procedure 35. For the reasons set forth here, the motion is granted.

## BACKGROUND

Plaintiff is an elderly, disabled widow on a fixed income. In January 2009, she sought to refinance the mortgage on her house in order to reduce her burdensome monthly payments. According to Plaintiff, Defendants were all involved in orchestrating a fraudulent refinancing transaction that has left her on the verge of losing her home. In this lawsuit, she alleges, among other things, that Defendants' actions have caused her severe and continuing emotional distress, including fitful and interrupted sleep, constant worry, and elevated blood pressure. (Doc. 41, Second Amended Complaint, ¶¶ 59, 60).

On January 19, 2012, BANA issued several discovery requests relating specifically to Plaintiff's claimed emotional distress. (Doc. 265-1, Ex. 1 ¶¶ 32-35).

Nearly eight months later, on September 17, 2012, Plaintiff produced her Cook County hospital medical records identifying geriatric specialist Elaine Liu, M.D., as her treating physician. The records reference emotional distress caused by a pending foreclosure case and indicate that Dr. Liu administered a two-part question depression test in September 2009. The records do not set forth the specific questions, however, or state whether the test was ever repeated. (Doc. 262, at 2; Doc. 265-1, Swantek Aff., Ex. 2 ¶ 11). Over the course of three days in October and November 2012, Plaintiff sat for her deposition and answered questions about her emotional distress. She claimed to be very nervous and jumpy, unable to shop in a store, unable to hold objects due to shaking hands, and unable to sleep well. She also discussed her complete loss of appetite and energy, and her suicidal thoughts. (Doc. 265, at 6 n.3).

In the meantime, on October 17, 2012, BANA issued a subpoena to depose Dr. Liu as a Rule 30(b)(6) fact witness. Plaintiff moved to quash the subpoena, arguing that since she intended to disclose Dr. Liu as an expert witness, the 30(b)(6) and expert depositions should be combined into one and taken after Dr. Liu produced her expert report. (Doc. 212). This Court agreed, (Doc. 218), and Plaintiff subsequently produced Dr. Liu's report on November 30, 2012. Dr. Liu opined that based on personal observations and a review of relevant medical records, Plaintiff suffers from "symptoms of insomnia, weight loss, anhedonia and emotional burdens, apparent over multiple office visits in the past year, [that] are compatible with the stress she is enduring from the threat of the loss of her home to foreclosure." (Doc. 265-4, Liu Report, at 2). Dr. Liu also noted that it is not uncommon for older adults to experience physical and

psychological distress due to poor financial situations, limited or no social support, and difficulties in mobility and cognition. (*Id.* at 1).

When BANA deposed Dr. Liu on December 19, 2012, she confirmed that she did not perform any comprehensive psychiatric or psychological examinations of Plaintiff prior to rendering her opinion. Nor did she ever repeat the two question depression test administered in September 2009. (Doc. 265-1, Liu Dep., Ex. 3, at 60, 68-76, 112-13, 163-64, 179-82, 291-93).

BANA now wants to have Sandra S. Swantek, M.D., Director of Geriatric Psychiatry for the Northwestern University Feinberg School of Medicine, perform a Rule 35 mental examination of Plaintiff, outside the presence of counsel or any other third-party observer. Plaintiff objects that this motion is untimely and fails to satisfy the requirements of Rule 35.

## DISCUSSION

Rule 35 allows a court to order a mental or physical examination when a party's mental or physical condition is "in controversy," and the moving party shows that there is good cause for the examination. FED. R. CIV. P. 35(a)(1), (2); *Walti v. Toys R Us*, No. 10 C 2116, 2011 WL 3876907, at *2 (N.D. Ill. Aug. 31, 2011). As the moving party, BANA must "affirmatively show that these requirements have been satisfied, and such a showing requires more than 'mere conclusory allegations of the pleadings' or 'mere relevance to the case.'" *Walti*, 2011 WL 3876907, at *2 (quoting *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964)).

Plaintiff argues that a mental examination is inappropriate here because (1) the motion is untimely; (2) her mental condition is not "in controversy"; (3) BANA has not

shown good cause for the examination; and (4) BANA has not properly specified the "time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it," as required by Rule 35(a)(2)(B). The Court addresses each argument in turn.

## A.    Timeliness

Plaintiff first objects that BANA waited too long to file this motion. She notes that BANA has known since at least February 2011, when she filed her Second Amended Complaint, that she is claiming damages due to emotional distress. This fact was reinforced between September 17 and December 19, 2012, when Plaintiff produced her medical records, sat for her deposition, produced Dr. Liu's expert report, and made Dr. Liu available for a deposition. Yet BANA waited until January 28, 2013 to seek a Rule 35 examination. Plaintiff claims that pursuant to *Miksis v. Howard*, 106 F.3d 754 (7th Cir. 1997), this is too late. (Doc. 262, at 4-5).

The plaintiff in *Miksis* filed a personal injury lawsuit seeking damages for severe injuries he sustained in a work-related accident. 106 F.3d at 756. Three months before the scheduled trial date, the defendants requested a Rule 35 examination to rebut expert testimony regarding the plaintiff's need for a multi-million dollar "life plan," i.e., "a prediction of high medical costs for the remainder of plaintiff's life." *Id.* at 758. The defendants claimed they were "sandbagged" by the life plan testimony, but the Seventh Circuit found it to be "clearly foreseeable from the nature of plaintiff's injuries," which included brain damage resulting in permanent physical and cognitive impairments. *Id.* The court thus concluded that the district court did not abuse its discretion in denying the Rule 35 examination. *Id. See also Balzer v. American Family Ins. Co.*, No. 2:08-

4

CV-241, 2010 WL 1838431, at *1-2 (N.D. Ind. May 6, 2010) (motion for Rule 35 exam untimely in auto accident case where the defendant waited until the discovery deadline passed before requesting it).

BANA insists that the facts of *Walti v. Toys R Us* are more on point. There, the defendant sought a mental examination in a discrimination case after deposing the plaintiff's medical experts. Though this was quite late in the discovery process, the defendant argued that it could not have foreseen the need for a Rule 35 examination any earlier. As the defendant explained, it was not until the depositions that it first learned that in forming expert opinions about the plaintiff's mental state, the physicians did not conduct any "peer-reviewed or other generally accepted psychological testing to determine the extent of [the plaintiff's] mental capacity and/or injury with psychological or scientific certainty." 2011 WL 3876907, at *4. The court found this sufficient to justify the examination, explaining that without it, the defendant's experts would not have any standardized data to review, which could render them unable to form opinions about the plaintiff's mental condition. *Id.* at *5. In reaching this conclusion, the court noted that unlike in *Miksis*, no trial date had yet been set in the case. Moreover, though the need for a life plan was foreseeable in a personal injury case, it was "less foreseeable" that an expert in a discrimination case "would testify about emotional injuries without having performed any standardized psychological examinations." *Id.*

This Court agrees with *Walti* that "*Miksis* does not . . . establish a bright-line rule requiring that requests for Rule 35 examinations must always be brought before the close of fact discovery." *Id.* at *4. As in *Walti*, it was not clear prior to Dr. Liu's deposition that she had not conducted any standard psychological examinations aside

from a single two-question test in September 2009. BANA has submitted an affidavit from Dr. Swantek identifying four written tests that physicians should use to detect and measure emotional distress in geriatric patients, and Dr. Liu has now testified that she did not administer any of these tests to Plaintiff. (Doc. 265-1, Swantek Aff., Ex. 2 ¶¶ 10, 11). Without a Rule 35 examination, BANA's experts may not be able to form opinions about Plaintiff's condition because they will not have the results of any standardized psychological tests. It is worth noting, moreover, that BANA's delay in filing this motion was caused at least in party by Plaintiff's own insistence back in October 2012 that Dr. Liu's deposition should wait until expert discovery. Given that the district court has not yet set a date for trial, this Court is satisfied that the examination "can be accommodated" and was filed within a reasonable time in light of the discovery schedule in this case. *Walti*, 2011 WL 3876907, at *7.

## B. Mental Condition "In Controversy" and "Good Cause" for the Exam

Plaintiff insists that a mental examination is still inappropriate because her claim of "simple" and "garden variety" emotional distress is insufficient to place her mental condition "in controversy." (Doc. 262, at 6, 8). She points to cases such as *Nolan v. International Bhd. of Teamsters Health & Welfare and Pension Funds, Local 705*, 199 F.R.D. 272 (N.D. Ill. 2001), where the court cautioned that "courts would be setting bad precedent and overstepping the limitations imposed by Rule 35 if they were to allow psychological examinations in every case where a plaintiff claimed damages for emotional distress or mental anguish of the type that any well balanced individual would experience as the victim of discrimination." *Id*. at 275. Plaintiff notes that it is common for someone to "suffer emotional harm from losing his or her home, or even from facing

6

such a possibility," *Park v. Wells Fargo Home Mortgage, Inc.*, 398 F.3d 937, 941 (7th Cir. 2005), and stresses that she has not (1) asserted a claim for infliction of emotional distress; or (2) alleged any "specific mental or psychiatric injury or disorder." (Doc. 262, at 8) (citing *Mitchell v. Iowa Interstate Railroad Ltd.*, No. 07-1351, 2009 WL 2431590, at *1 (C.D. Ill. Aug. 5, 2009) (identifying these two elements as examples of when a plaintiff may place her mental condition in controversy)).

Plaintiff is correct that not every claim for emotional distress opens the door to a Rule 35 examination. For example, a plaintiff does not inject her mental condition into the case merely by alleging that she suffered "humiliation, embarrassment, and other similar emotions." *Flowers v. Owens*, 274 F.R.D. 218, 220 (N.D. Ill. 2011) (quoting *Santelli v. Electro-Motive*, 188 F.R.D. 306, 309 (N.D. Ill. 1999)). At the same time, when a plaintiff complains of "'resulting symptoms or conditions that [she] might have suffered,' including 'sleeplessness, nervousness, [and] depression,'" then her mental condition is in controversy. *Id. See also Walti*, 2011 WL 3876907, at *2 (allowing Rule 35 examination where the plaintiff's "emotional injuries r[o]se above mere humiliation and embarrassment."); *Nolan*, 199 F.R.D. at 276 (cautioning that if the plaintiff wanted to avoid a Rule 35 examination, then she would need to amend her complaint to reflect that her "damages claims are truly limited to compensation for her humiliation and embarrassment.").

Unlike the plaintiff in *Nolan*, Plaintiff claims to suffer from much more than just "humiliation and embarrassment." Indeed, she complains of insomnia, weight loss, anhedonia, fitful sleep, loss of appetite and energy, jumpiness, shakiness, and suicidal thoughts. (Doc. 265, at 6). Plaintiff not only submitted an affidavit from her friend

Arleain Garner affirming that she is depressed with suicidal thoughts, (Doc. 256-3, Garner Aff., ¶¶ 4, 5), but she has also retained an expert to discuss her severe mental distress and its causes. *See Mitchell*, 2009 WL 2431590, at *1 (plaintiff may place mental condition in controversy by offering expert testimony to support a claim of emotional distress). Finally, Plaintiff's emotional injuries comprise a significant portion of her claimed damages, as she seeks to recover some $510,161 for the reduction in the value of her life as a result of Defendants' actions. *See Walti*, 2011 WL 3876907, at *2 ("When emotional distress damages are a major component of a damages claim, a litigant's mental health has been held to be in controversy.").

For similar reasons, the Court also finds that there is good cause for a mental examination in this case. Plaintiff has disclosed Dr. Liu as an expert witness who will testify about her mental state, and BANA should have an opportunity to rebut that evidence. *Walti*, 2011 WL 3876907, at *3. *See also Hart v. Roundy's Supermarkets, Inc.*, No. 10 C 824, 2011 WL 3687622, at *2 (E.D. Wis. Aug. 23, 2011) (finding good cause for mental exam where "the defendant has the right to challenge" the evaluations set forth by the plaintiff's experts). In addition, BANA's Rule 35 expert has identified several tests that should be performed on Plaintiff to assess her emotional condition. BANA cannot obtain this information from another source because Dr. Liu did not administer those tests. *Id*. Finally, there is evidence that Plaintiff is seeking to recover for a continuing harm. *Id.* at *2 (citing *Jansen v. Packaging Corp. of America*, 158 F.R.D. 409, 410 (N.D. Ill. 1994)) (good cause "doubly clear" where the plaintiff alleged continuing emotional harm). In that regard, Plaintiff's damages expert has accounted for a 10% to 20% reduction in value of life based on Plaintiff's representation that she

will never get back 100% enjoyment. (Doc. 265, at 7; Doc. 265-1, Ex. 4, at 142-43, 146). Plaintiff's assertion that "[o]nce BANA dismisses its foreclosure complaint, [she] will cease experiencing emotional distress," thus rings hollow. (Doc. 262, at 8 n.1).

Based on the foregoing analysis, the Court is satisfied that Plaintiff's mental condition is "in controversy" for purposes of Rule 35, and there is good cause for ordering a mental examination in this case.

## C.      Rule 35(a)(2)(B)

Plaintiff next objects that BANA has failed to specify the "time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it," as required by Rule 35(a)(2)(B). The Court considers these arguments below.

### 1.      Nature of Exam

Plaintiff first claims that it is unclear whether BANA is seeking only a mental examination, or also a physical examination. (Doc. 262, at 10). In that regard, defense counsel sent Plaintiff's counsel an email message on January 25, 2013 indicating that "testing may have a physical exam component." (Doc. 262-1, at 3). BANA does not address this issue in its reply memorandum but uniformly discusses the need for a mental, as opposed to physical, examination. This Court has considered only whether Plaintiff may be subjected to a mental examination, and limits its findings accordingly. To the extent BANA is seeking a physical examination of Plaintiff, the request is denied.

### 2.      Scope of the Exam

Plaintiff also objects that BANA has not provided specific details regarding the scope of the examination. Plaintiff wants BANA to describe the four standardized tests

Dr. Swantek has proposed, including the types of questions involved and the "specific conditions or symptoms they examine for." (Doc. 262, at 11). In response, BANA has submitted an affidavit from Dr. Swantek identifying the written tests by name: Geriatric Depression Scale; Personal Health Questionaire-9; Beck Hopelessness Scale; and Columbia Suicide Severity Rating Scale. Dr. Swantek has certified that all of these tests are "well-established nationally and internationally validated instruments for detecting" depression in older adults and the severity of risk of suicide. (Doc. 265-1, Swantek Aff., Ex. 2, ¶ 10). Plaintiff has not cited any case requiring greater information, and she has retained her own expert witness who had the opportunity to conduct any tests she felt were appropriate, and who can challenge the reliability and scope of the tests performed by Dr. Swantek.

To address Plaintiff's other scope-related concerns, the Court orders the parties to meet and confer to agree on a mutually convenient date, time and place for the mental examination. The parties must also work to agree on an appropriate time limit for the examination, keeping in mind Plaintiff's "understandable concern that the examination not be unduly and unnecessarily intrusive or insensitive," and BANA's legitimate need to fully and reasonably explore Plaintiff's mental condition. *Walti*, 2011 WL 3876907, at *7. The Court notes that Dr. Swantek has indicated that the testing will take between two and three hours depending on Plaintiff's level of cooperation and/or her need for breaks during the examination. (Doc. 256, at 5). This seems eminently reasonable. *See, e.g., Hart*, 2011 WL 3687622, at *3 (examination lasting from 9:00 a.m. to 4:00 p.m. with breaks every hour and a lunch break "seems to be appropriate.").

### 3.    Choice of Examiner

Plaintiff next challenges the selection of Dr. Swantek as the examiner, arguing without citation that "[n]ormally, the Court chooses among at least two proposed examiners." (Doc. 262, at 12). "While defendant may not have an absolute right to choose its examining doctor, the defendant's choice should be respected in the absence of a valid objection." *McDonald v. Southworth*, No. 1:07-CV-217-JMS-DFH, 2008 WL 2705557, at *4 (S.D. Ind. July 10, 2008) (quoting *Chrissafis v. Continental Airlines, Inc.*, No. 95 C 5080, 1997 WL 534874, at *5 (N.D. Ill. Aug. 21, 1997)). This Court has reviewed Dr. Swantek's extensive curriculum vitae and is satisfied that she is a well-trained, well-educated, licensed and board certified geriatric psychiatrist who is amply qualified to conduct a Rule 35 mental examination. (Doc. 265-1, Ex. 2A). The Court declines to require BANA to identify an alternative examiner for consideration. *See Walti*, 2011 WL 3876907, at *7 (ordering Rule 35 mental examination to be performed by the single examiner identified by the defendant); *Hart*, 2011 WL 3687622, at *1 (same).

### 4.    Third-Party Observer

Plaintiff finally argues that she should be allowed to "have a third party present at the examination and to have it recorded." (Doc. 262, at 13). This argument is primarily based on her concern that Dr. Swantek is "BANA's paid expert in this case (and not an independent examiner)." (*Id.*). In Plaintiff's view, "an unsupervised examination could easily be conducted in biased fashion, exceed the limits of the Court-ordered exam, or could be transformed into a *de facto* deposition where plaintiff is not represented by counsel." *Id.* (citing *Zabkowicz v. West Bend Co.*, 585 F. Supp. 635 (E.D. Wis. 1984)).

11

The *Zabkowicz* court did hold that "in the context of an adversary proceeding, the plaintiffs' interest in protecting themselves from unsupervised interrogation by an agent of their opponents outweighs the defendants' interest in making the most effective use of their expert." 585 F. Supp. at 636.

More recently, however, courts have rejected this view of Rule 35. In *E.E.O.C. v. Grief Bros. Corp.*, 218 F.R.D. 59 (W.D.N.Y. 2003), for example, the court held that the *Zabkowicz* "view of the Rule 35 examination process is not in keeping with the general holdings of federal courts on this issue and would, if followed in all cases, undermine the ability of the requesting party's expert to conduct an effective examination." *Id.* at 64. *See also Stefan v. Trinity Trucking, LLC*, 275 F.R.D. 248, 250 (N.D. Ohio 2011) ("[T]he [*Zabkowicz*] court relied upon no prior case law, the case has not been followed by any subsequent courts, and is not binding on this Court."). A court in this district has also confirmed that normally, "there is no video camera or other recording device at the [Rule 35] examination." *Newman v. Gaetz*, No. 08 C 4240, 2010 WL 4928868, at *1 (N.D. Ill. Nov. 29, 2010).

This Court sees no basis for allowing a third party to observe Plaintiff's Rule 35 examination, or for authorizing a recording. Dr. Swantek is bound by medical ethics to use her medical judgment to evaluate Plaintiff, and there is no reason to believe that her examination will be overreaching merely because she has been selected by BANA. *See Hart*, 2011 WL 3687622, at *2. In addition, BANA has presented a sworn affidavit from Dr. Swantek stating that the presence of a third-party observer "would adversely affect the way [Plaintiff] answers questions." (Doc. 265-1, Swantek Aff., Ex. 2 ¶ 13). Plaintiff's general and unsupported concern that Dr. Swantek will subject her to an

"interrogation" or "exceed the limits of the Court-ordered exam" is insufficient to overcome the possible harm to the examination if a witness is present. Indeed, "courts recognize the fairness concerns involved in having the examination by a defendant's expert recorded or witnessed when the examination by petitioner's own expert was not similarly recorded or witnessed." *Newman*, 2010 WL 4928868, at *2. BANA has stated that it will comply with Rule 35(b) and, upon request, provide Plaintiff with "a detailed report from Dr. Swantek . . ., including diagnoses, conclusions, and the results of any tests." (Doc. 265, at 10). Plaintiff has not established that she is entitled to more in this case.

## CONCLUSION

For the reasons stated above, BANA's Motion for Mental Examination (Doc. 256) is granted, and the examination may not be observed by a third party or recorded. Parties are to appear for a status hearing on February 28, 2013 at 2 p.m. Prior to the hearing, the parties are to confer concerning the date, time, place, and duration of the examination, as well as dates for completing expert disclosures and depositions. If the parties are able to reach an agreement, they may send an email to the Court's proposed order box describing the agreement and the status hearing will be cancelled.

ENTER:

Dated: February 22, 2013

Sheila Finnegan
United States Magistrate Judge